**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JASON ALLAN SINGER,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW BRAMAN, *et al.*<br><br>Defendants. | 1:17-cv-00725-DAD-EPG<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS PLAINTIFF'S CASE FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH COURT ORDERS**<br><br>(ECF Nos. 1, 11)<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

Plaintiff Jason Allan Singer, appearing *pro se* and *in forma pauperis*, filed a Complaint on May 18, 2017. (ECF No. 1.) The Complaint alleges violations of 42 U.S.C. § 1983 against Defendants Downtowner Inn in Bakersfield, California; Matthew Braman, the night manager of the Downtowner Inn; Sandy Cartwright, the night clerk at the Downtowner Inn; and Stephany Munoz, a room cleaner at the Downtowner Inn. Plaintiff alleges that Defendants conspired with the Bakersfield Police Department to cause him injury. *Id.*

The Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2). On June 15, 2017, the Court issued an order dismissing the Complaint with leave to amend, finding that Plaintiff had failed to state a claim upon which relief could be granted. (ECF No. 11.) The Order

1

instructed Plaintiff to file an amended complaint on or before July 17, 2017. *Id.* at 6. The Order also warned, "Failure to file an amended complaint by the date specified will result in dismissal of this action." *Id.* Plaintiff failed to file an amended complaint by the date specified.

Accordingly, the Court makes its recommendations herein, that Plaintiff's Complaint be dismissed for failure to state a claim, failure to prosecute, and failure to comply with court orders.

**I. FAILURE TO STATE A CLAIM**

   **A. SCREENING REQUIREMENT**

Under 28 U.S.C. § 1915(e)(2), the Court must conduct a review of a *pro se* complaint to determine whether it "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief." If the Court determines that the complaint fails to state a claim, it must be dismissed. *Id.* Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id*. at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hosp. Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to the Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in the Plaintiff's favor, *Jenkins*

*v. McKeithen*, 395 U.S. 411, 421 (1969). Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

**B. PLAINTIFF'S ALLEGATIONS**

Plaintiff stayed at Defendant Downtowner Inn on the evening of May 13, 2015. At some point, when Plaintiff had left his room, Defendant Stephany Munoz entered his room to clean it. Munoz observed drug paraphernalia in the room, including pipes for smoking marijuana and methamphetamine. Munoz took pictures of the paraphernalia and texted them to Defendant Matthew Braman, who asked Defendant Sandy Cartwright to call police.

When police arrived, Defendants provided them with a copy of Plaintiff's driver's license for identification purposes and gave them Plaintiff's room number. The officers identified Plaintiff as a parolee who had previously been convicted of battery and was subject to drug testing and random searches. Braman told the officers that Plaintiff was scheduled to check out of the motel that morning and asked that the officers inform Plaintiff that all illegal drug paraphernalia would need to be removed from the room upon checkout. Braman did not ask the officers to remove Plaintiff from the room, although he gave them a room key to Plaintiff's room.

The officers went to Plaintiff's room, knocked, and announced that they were from the Bakersfield Police Department. They did not receive any response and attempted to use the room key that Braman had provided. Because the door latch on the door was engaged, however, the officers were only able to partially open the door. From their vantage point, they observed Plaintiff lying on the bed in the room, along with Crystal Sullivan, a female companion of Plaintiff's. Sullivan came to the door and unlocked it. The officers attempted to speak to Plaintiff, but Plaintiff did not respond and stepped out of view of the officers. Concerned that

3

Plaintiff might be seeking a weapon, the officers attempted to push open the door. Plaintiff came to the door and tried to force it shut.

A short struggle through the door opening ensued before Plaintiff retreated into the room. As the officers entered the room, they observed a variety of "hand tools, large glass cylinders, and electronic items." One officer drew his taser and fired it at Plaintiff, but the taser failed to disable Plaintiff. Plaintiff then attempted to climb out of the window of the room. The officer ran to window and reached out to him, but Plaintiff released his grip and dropped three stories onto the ground. The officers summoned an ambulance and Plaintiff was taken to Kern Medical Center and treated. A later search of the room found 286 grams of marijuana and a variety of drug paraphernalia, including equipment that could be used to manufacture illegal drugs.

Plaintiff contends that Defendants engaged in a conspiracy to conduct an illegal search of his room, which caused him to severely injure himself when he fell from the third story window. Plaintiff does not name the police department or police officers who participated in the search as defendants. Plaintiff asks for compensatory damages related to the injuries he sustained in his fall.

**C. DISCUSSION**

To state a claim under § 1983, a plaintiff "must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Private parties, such as the Defendants in this action, are not generally acting under color of state law for the purposes of § 1983. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) ("Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power. It also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed").

In some circumstances, a conspiracy between private and state actors can render the

private actor liable under § 1983. "To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown." *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983). "To be liable as a co-conspirator, a private defendant must share with the public entity the goal of violating a plaintiff's constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). "The Ninth Circuit requires a 'substantial degree of cooperation' between the government and a private citizen before finding such a conspiracy." *Annan-Yartey v. Honolulu Police Dep't*, 475 F.Supp.2d 1041, 1046 (D. Haw. 2007) (quoting *Franklin*, 312 F.3d at 445).

      A conclusory allegation that a conspiracy existed is not enough. *Price*, 939 F.2d at 708 ("a defendant is entitled to more than the bald legal conclusion that there was action under color of state law"). "[M]erely complaining to the police does not convert a private party into a state actor." *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989) (citing *Rivera v. Green*, 775 F.2d 1381, 1382–84 (9th Cir. 1985)). Even contacting the police and then providing them false statements about a plaintiff is not enough to create a conspiracy. *Annan-Yartley*, 475 F.Supp.2d at 1047 ("providing false information to an arresting officer is not, by itself, sufficient to state a claim against that private party under § 1983") (quoting *Moore v. Marketplace Rest., Inc.*, 754 F.2d 1336, 1340 (7th Cir. 1985)). Nor is it an actionable conspiracy where a private party collects information about potential criminal activity, contacts authorities about that activity, and then hands that information over to authorities. *Arnold v. IBM Corp.*, 637 F.2d 1350, 1357-58 (9th Cir. 1981) ("The undisputed facts concerning defendants' involvement in the arrest and indictment of Arnold, and the search of Arnold's residence, established that their involvement with the Task Force did not proximately cause Arnold's injuries . . . a person who supplies inaccurate information that leads to an arrest is not involved in joint activity with the state and, thus, not liable under section 1983.") (citing *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1978)).

5

Plaintiff alleges that Defendant Munoz, a hotel employee, took pictures of drug paraphernalia that he left around his room. She then provided those pictures to Defendant Braman, who had Defendant Cartwright call the police. They then provided those pictures to police. They did not undertake any of these actions under the direction of the police. Nor did they assist in the later search of Plaintiff's room incident to his arrest. Given these facts, Plaintiff has not stated a claim against any of the Defendants because he has not established that the Defendants had any agreement or shared goal with police or that Defendants had the requisite "substantial degree of cooperation" with the police. Thus, the Defendants are not state actors and cannot be held liable under § 1983.[1] *See, e.g.*, *Fonda*, 707 F.2d at 438 (private party allowing police access to evidence in their possession "is, without more, insufficient to prove a conspiracy"); *Purvis v. Wiseman*, 298 F. Supp. 761, 763–64 (D. Or. 1969) ("If the maids did transgress Petitioner's privacy, the product of this transgression will not be excluded from evidence unless State action is involved. The Fourth Amendment does not apply to actions of private persons.") Thus, Plaintiff has failed to state a claim upon which relief can be granted.

## II. FAILURE TO PROSECUTE AND TO COMPLY WITH COURT ORDERS

On July 31, 2017, this Court issued findings and recommendations, recommending that this action be dismissed for Plaintiff's failure to state a claim, failure to prosecute, and failure to comply with the Court's June 15, 2017 Order. (ECF No. 14.) The Court instructed Plaintiff to file written objections within fourteen (14) days after being served with the findings and

---

[1] The Complaint also contends that Defendants' actions caused an "illegal search and seizure" that impinged on his right to privacy. The Court need not reach the question of whether a constitutional deprivation has been alleged because the Complaint establishes that no state action occurred. The Court observes, however, that Plaintiff was a parolee whose conditions of parole included a search condition and thus had a correspondingly lower expectation of privacy. *Samson v. California*, 547 U.S. 843, 852 (2006) ("Examining the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' *Morrissey,* 408 U.S., at 477, 92 S.Ct. 2593, including the plain terms of the parole search condition, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate.") (*citing* Cal. Penal Code § 3067(a) ("Any inmate who is eligible for release on parole pursuant to this chapter shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.")).

recommendations. *Id.* at 3. Plaintiff was served with the findings and recommendations by mail on July 31, 2017. Plaintiff did not file written objections to the findings and recommendations.

On August 14, 2017, Plaintiff filed a motion for an extension of time to file an amended complaint. (ECF No. 15.) Plaintiff stated that he was researching his legal claims and was requesting an extension in order to properly amend his complaint. *Id.* Although Plaintiff consistently failed to meet deadlines and to comply with this Court's orders, the Court granted Plaintiff's request for an extension of time. (ECF No. 16.) The Court vacated its July 31, 2017 Findings and Recommendations, and directed Plaintiff to file an amended complaint no later than October 6, 2017. The Court warned that if Plaintiff failed to file an amended complaint by this deadline, the Court would issue final findings and recommendations recommending the dismissal of this action.

On October 11, 2017, Plaintiff again filed a motion for extension of time. (ECF No. 17.) Plaintiff stated that his prison facility was under lockdown for two months, and he did not have legal library access to complete his research to file an amended complaint. *Id.* Again, in the interest of justice, the Court granted Plaintiff a thirty-day extension to file his amended complaint. (ECF No. 18.) The Court, however, stated, "This will be the final extension. If Plaintiff fails to file an amended complaint within thirty days from the date of service of this order, the Court will issue a final Findings and Recommendations recommending the dismissal of this action."

As of the date of these findings and recommendations, Plaintiff has not filed an amended complaint.

Local Rule 110 provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may be grounds for the imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "in the exercise of that power, they may impose sanctions including, where appropriate . . . dismissal." *Thompson v. Housing Auth.,* 782 F.2d 829, 831 (9th Cir.

1986). A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

To determine whether to dismiss an action for lack of prosecution, failure to obey a court order, or failure to comply with local rules, the court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives. *Ghazali*, 46 F.3d at 53; *Ferdik*, 963 F.2d at 1260-61; *Henderson*, 779 F.2d at 1423-24.

In the instant case, the Court finds that the public's interest in expeditiously resolving this litigation and the Court's interest in managing the docket weigh in favor of dismissal because the case has been pending since May 25, 2017, the date it was it transferred to this District. Plaintiff has shown no interest in participating in the litigation any further.

The third factor, risk of prejudice to defendants, also weighs in favor of dismissal because a presumption of injury arises from any unreasonable delay in prosecuting an action. *Anderson v. Air West,* 542 F.2d 522, 524 (9th Cir. 1976).

The fourth factor, public policy favoring disposition of cases on their merits, is outweighed by the factors in favor of dismissal. Finally, a court's warning to a party that his failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Henderson*, 779 F.2d at 1424. The Court's June 15, 2017 Order stated that the case would be dismissed if Plaintiff failed to file an amended complaint. (ECF No. 11.) The Court's September 7, 2017 Order warned that that the case may be

dismissed if Plaintiff failed to file an amended complaint. (ECF No. 16.) The Court's October 11, 2017 Order also warned that the case may be dismissed if Plaintiff failed to file an amended complaint. (ECF No. 18.) Still, and despite several extensions, Plaintiff has failed to comply with the Court's orders. Moreover, there are few sanctions that could compel a plaintiff to prosecute an action that he is simply uninterested in pursuing, particular at this early stage of litigation.

### III. FINDINGS AND RECOMMENDATIONS

Accordingly, IT IS HEREBY RECOMMENDED that:

1. This case be DIMISSED for failure to state a claim, failure to prosecute, and failure to comply with the Court's June 15, 2017, September 7, 2017, and October 11, 2017 orders;
2. The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations will be submitted to the United States District Judge assigned to this case pursuant to the provisions of Title 28 of the United States Code section 636(b)(1). Within **fourteen (14)** days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015).

IT IS SO ORDERED.

Dated: **December 27, 2017**           /s/ Erica P. Grosjean
                                                    UNITED STATES MAGISTRATE JUDGE